Price, J.
This proceeding calls in question the validity of Section 3574-1 of our Revised Statutes., The section was enacted by the legislature on April 6,1893, and is entitled “An act to enable cemetery associations to secure land for entrance to their' grounds, or, for the improvement of entrances already made.” See 90 O. L., 153. The entire provision is as follows:
“Section 1. Be it enacted by the general assembly of the state of Ohio, that Avhenever in the judgment of the officers of any cemetery association within this, state, it is necessary to secure additional land for the purpose of malting an entrance to its grounds, or to improve an entrance already made, said officers may make application to the county commissioners of the county in Avhich said cemetery is located, for the appointment of appraisers. The county commissioners, shall, upon such application being made to them, appoint three disinterested freeholders of the county as. appraisers, whose duty it shall be to view the land sought to be obtained, appraise its value, and make' due return of said appraisement to the county commissioners; and when said cemetery association shall have made payment of the amount of said appraisement, together Avith the costs thereof, then the title of said land shall vest in said association. An appeal may be taken from the appraisement made by said appraisers to the probate court of the county in which, said cemetery, or such entrance, may be located, in manner provided in chapter 4, title 6 of the Revised Statutes of Ohio.
*243 “Section 2. This act shall take effect and he in force from and after its passage.”
It is apparent that this process of obtaining title to the property of another is made exceedingly simple, if it does lack the qualities of fairness. In this case the trustees of the cemetery association concluded more land was needed for an entrance to the. cemetery, and made application .to that effect to the commissioners of the county who appointed three freeholders of the county to appraise the desired strip. They appraised its “value” at $30.00 and filed the appraisal with the commissioners. The statute says, that on payment of the amount to the landowner the title vests in the applicant association. Compensation for the land taken and injury to the remaining lands, which is contemplated by our state constitution, is not made a condition precedent to the passing of the title and right of possession. We need not stop to argue that this method of appropriating real property and awarding compensation is clearly unconstitutional, unless a right and means of appeal are given, whereby the landoAvner, in some appellate tribunal, can have his compensation and damages assessed by a jury. If such right and means of appeal are provided for the law may be sustained. See Lamb & McKee v. Lane, 4 Ohio St., 167; Reckner v. Warner, 22 Ohio St., 275; Chesbrough v. Commissioners, 37 Ohio St., 515.
The statute under consideration attempts to confer the right of appeal but limits it to the provisions of chanter 4, title 6 of the Revised Statutes, and if the right and means of appeal are not found there, clearly none exist. When we look to the statutes *244 embraced in chapter 4, title 6, we find that they pertain to the construction of levees on proceedings commenced and conducted to completion in the probate court, and we look in vain for any method of appeal that could have applied in this case. In fact there seems to be no right of appeal conferred on any party connected with the proceedings authorized by chapter 4, title 6; and yet Section 3574-1 refers plaintiffs in error to that source to get a jury to assess their compensation and damages.
However, counsel for defendant in error says, the legislature intended to say chapter 4, title 7 instead of title 6, the latter figure being used by mistake. How does counsel ascertain the legislative intent? And how can we say that the general assembly intended to say title 7 rather than title 6?
It is true that the statutes in chapter 4, title 7 provide for appeal in road cases, but it seems to us we have no power to amend the legislative enactment. If the legislature made the mistake suggested, it alone can amend and correct it. The intent of the legislature is determined from what it says, and if its language is clear and unambiguous, the courts have no authority to change it. On this point it is sufficient to cite two recent cases decided by this Court: Hough v. The Dayton Manufacturing Co., 66 Ohio St., 427 ; Slingluff et al. v. Weaver et al., 66 Ohio St., 621.
We conclude that the act in question is incompatible with section 19 of article 1 of our constitution, and could not furnish the foundation for the proceedings taken by the defendant before the county commissioners. The judgment of the circuit court is re *245 versed, and a decree of perpetual injunction is granted on the petition of plaintiffs in error as therein prayed for.

Judgment reversed and judgment for plaintiff in error.

Burket, C. J., Spear, Davis, Shauck and Grew, JJ., concur.